## Motch's Ex'x et al. v. Motch's Ex'rs et al.

January 16, 1948.

James S. Forester, Judge.

Robert J. Watson for appellants.

R. L. Maddox, J. E. Sampson and Arthur Rhorer for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming in part, reversing in part.

Upon the death of H. E. Motch, and pursuant to the terms of his will, appellees, A. B. Motch and George Motch, were appointed and qualified as executors. About nine months after the death of H. E. Motch, his widow, Harriet E. Motch, died testate, and under the terms of her will, appellant, Alice Motch Denbow, the daughter of Harriet E. Motch and sole beneficiary under her will, was named executrix. Under the belief that the executors were neither properly nor diligently winding up the estate of H .E. Motch, appellant, as executrix of her mother's estate, and individually, brought suit for the settlement of the H. E. Motch estate. The matter was referred to master commissioner and after proof was taken, both before the commissioner and in open court, the court entered judgment in which some of the findings of the master commissioner were approved and some disapproved. Exceptions were properly taken by

interested parties, and to those rulings adverse to the plaintiff below this appeal is prosecuted.

In appellant's brief there is discussion of eight exceptions taken below by appellant. The first exception has to do with alleged neglect of duty of the executors in permitting a real estate agent to retain the sum of $475 of the proceeds of sale of certain real estate over and above his legitimate commission. The transaction arose as follows: During his lifetime H. E. Motch sold to a Mrs. Raines some property in Middlesboro. In order to arrange for the purchase price Mrs. Raines borrowed from the Middlesboro Federal Savings and Loan Association certain sums and secured the loan by a first mortgage on the real estate, and H. E. Motch retained a second lien to secure the balance due him on the purchase price. After the death of H. E. Motch, Mrs. Raines defaulted in payments due both to the Middlesboro Federal Savings and Loan Association and to the executors.

Mrs. Raines agreed with the executors and officials of the Loan Association to take the sum of $250 for her equity in the real estate. Arrangement was then made with a Mr. Lambert to sell the property. In their settlement the executors reported they received $3,500 for the property, out of which Mr. Lambert was paid a 5% commission, or the sum of $175 for making the sale, and Mrs. Raines was paid her $250 according to agreement. It developed, however, that Mr. Lambert actually sold the property for $4,000 and retained the $500; the difference between the $3,500 agreed price and the price for which it was sold, making a total of $675 received for selling the property.

Appellant claims that Mr. Lambert would be entitled to 5% of $4,000, or $200, and that the $475 additional amount which he received should be charged against the executors. It will be necessary to call attention only to two or three matters relative to the above transaction. Certainly the executors should use all diligence in protecting the estate. However, they should not enter into business for the estate. In fact the contrary is true. A careful reading of the evidence shows possibly some conflict as to arrangements for the sale of the property, but there stands out in the testimony

the fact that $3,500 made the estate whole on the note due which was secured by the lien retained in the deed. One of the executors testified positively that with this in view he asked that the property be sold for the $3,500. He stated that he knew nothing about Mr. Lambert receiving a greater sum than this until after the transaction was closed and Mrs. Raines had executed her deed to the purchaser.

Much of appellant's brief is devoted to the matter of a parol contract for the sale of real estate and what should be done when a contract is fully executed. Using as a basis that argument Mrs. Raines likewise could not have been bound on a parol agreement. She had the legal title to the property and it was she who executed the deed to the purchaser. Out of the sale price the Savings & Loan Association first had a right to expect, and did receive, the amount due it. Its interest went no further. Out of the balance the executors could expect, and did receive, the amount due the estate. That was the extent of their interest. Mr. Lambert retained this additional $500. That matter can be settled only as between the person or persons rightfully entitled to it and Mr. Lambert. We conclude, therefore, that this sum is not chargeable to the executors and the court below properly so found.

To the exception seeking to charge the executors with $19 as excess in payment for work done in cleaning up the Raines house preparatory to sale, and the $6.70 as an improper expenditure for filing unnecessary lawsuit, we merely apply the maxim "de minimus non curat lex."

Appellant complains about the judgment relative to the failure of the executors to pay the inheritance tax in time to save the discount pursuant to KRS 140.210. That failure so to do within the nine months resulted in the appellant being penalized $66. It is insisted that the executors should be charged with that amount. In answer thereto we merely call attention to the fact that, with certain limitations, under KRS 140.190 personal representatives, trustees, and beneficiaries are personally liable for inheritance taxes. It follows then that the obligation to pay the inheritance tax is placed as

much upon the beneficiary as upon the executors of the estate.

Complaint is made of the attorneys' fee in the sum of $600. Considering the size of the estate and the advice and work necessary to be done in an ordinary estate of this size, and further in view of the rule that counsel fees of personal representatives are left largely to the discretion of the trial court, we see no reason why the finding of the chancellor in this respect should be disturbed. See Stratton v. Wilson, 170 Ky. 61, 185 S. W. 522, Ann. Cas. 1918B, 917.

Appellant complains about the per cent of commission allowed the executors. This seems to be based upon the fact that most of the funds came into the hands of the executors without any difficulty to them. We find no merit in appellant's contention relative to this matter.

We have reserved until last two exceptions concerning which we think the appellant's contentions are meritorious. The first has to do with the failure promptly to pay the interest bearing obligations in order to stop the running of interest. Of course this must depend upon the availability of money to pay the obligations. Here the executors made a hurried distribution of money to legatees. In fact less than a month after the death of the testator $7,400 was distributed to the legatees. The payment of the interest bearing obligations was, therefore, necessarily deferred until other assets were converted into money. By reason of this action the executors were required to pay $170.66 over and above what would have been necessary to pay had they refrained from making the distribution to legatees and paid these interest bearing obligations. Thus appellant was penalized in that sum. We think the appellant obviously correct in this contention. The executors should have been charged with this amount.

The next and last item deals with the claim of George Motch, one of the executors, and brother of the testator, growing out of a claim for compensation for work which he had done for H. E. Motch prior to his death and while absent and away in Florida. This work apparently consisted of collecting rents and receiving

payments and interest on notes. It appears that George Motch had filed claim for $563.67 but the court below rejected a part thereof and allowed him only $439 as proper payment. Appellant takes the position, and correctly so, that the services performed here, not being particularly extraordinary, fall within the rule that, in the absence of an express contract, services rendered by a close relative are presumed to be gratuitous. See Allen v. Smith, 208 Ky. 207, 270 S. W. 782. The only testimony about any express contract to pay for these services is found in the testimony of George Motch, but, in this, we run headlong into 606 of the Civil Code of Practice. We are, therefore, of the opinion that the court should have disallowed this claim in its entirety.

Wherefore, on these last two items the judgment is reversed, and on all other matters it is affirmed.