Dora Mae **RABOLD** et al., Appellants,

v.

**Walter Lee ROBERTS**, Sr., et al., Appellees.

Court of Appeals of Kentucky.

March 7, 1969.

Rehearing Denied Oct. 3, 1969.

Robert E. Hogan, Louisville, for appellants.

S. Arnold Lynch, Louisville, for appellees.

STEPHEN COMBS, Jr., Special Commissioner.

This is an appeal from a judgment in favor of appellee against appellant in the sum of $3,684.40 with interest and costs. The parties to this action are suing in a dual capacity as administratrix and executor, and hereafter for brevity and convenience we will refer to the parties by their Christian names.

The questions presented by appellant Dora are as follows: (1) Was it lawful for Dora, while acting as administratrix, to distribute to herself as one of the two only heirs at law the aggregate sum of $3,199.40 as her one-half distributable share of the estate of her father? (2) Was it legal for Dora to pay herself $300 for extraordinary services rendered to her father prior to his death and to the estate after his death? And, (3) did the court err in refusing to permit Dora, after judgment, to file proof of her claim for extraordinary services? All of these questions were resolved adversely to Dora in the trial court.

The case was submitted to the trial judge upon stipulation of the parties filed and made a part of the record. Briefly stated as appears from the stipulation, the facts are as follows:

Lemuel P. Roberts died August 3, 1964, leaving as his only surviving heirs at law two children, Dora Mae Rabold and Walter Lee Roberts. His will could not be found immediately following his death, and on August 21, 1964, with the consent of Walter, Dora was appointed administratrix. The estate consisted of real estate located at 820 South Second Street, Louisville, and personalty of the gross value of $9,553. A few days before his death, Lemuel P. Roberts divided between his two children $30,000 in building and loan institution funds. On September 1, 1964, Dora distributed to herself as an heir the sum of $2,362.34 as shown by check. On the same day, she was notified that a will of her father had been discovered. On September

4, 1964, the discovered will, dated January 3, 1958, was offered for probate. Dora objected to its probate, and the matter was passed to September 17, 1964. On this occasion and while in the courtroom, Dora handed Walter a check for $2,362.34. A second will was found dated November 10, 1958, and presented for probate September 17, 1964. Dora's counsel moved the court to pass the matter until September 24, upon which date the second will was admitted to probate as the last will of Lemuel P. Roberts. The probated will designated Walter as the executor and trustee under the will, and he thereupon qualified as such. The probated will devised the real estate to Walter and the remainder of the estate, consisting principally of personalty, to the two children in equal proportions.

On September 18, 1964, Dora, in her capacity as administratrix, made final distribution to herself in the amount of $837.06, which was one-half of the remaining personalty in her hands. She did not tender to appellee at this time a check in a like amount. On September 30, 1964, an order was entered in the county court releasing Dora as administratrix, but requiring her to file a settlement showing her acts during the period she was administratrix. At that time the inheritance taxes had not been paid or computed.

On September 2, 1964, Dora paid herslf $300 for extraordinary services rendered decedent at his 820 South Second Street residence and for extraordinary services rendered the estate after the death of her father. On September 18, 1964, she also issued to herself a check in the sum of $238.33 for her commission on the money received and distributed by her as administratrix.

On October 1, 1964, Dora appealed to the Jefferson Circuit Court from the order probating the will dated November 10, 1958. In June 1966, a jury in the Jefferson Circuit Court upheld the probate of the will. Walter filed written objections in the county court to Dora's final accounting as administratrix, particularly objecting to

allowance of the $300 paid to appellant for extraordinary services, $185 for advanced fees to the commissioner and court reporter, and $3,199.40 for her distributable share. The matter was referred to a commissioner of the Jefferson County Court who heard testimony and made his findings of fact, conclusions of law, and recommendations, which were made a part of the record in the case. The commissioner recommended approval of the payment of the $238.33 for commission but disapproval of the other items. An appeal was taken to the Jefferson Circuit Court which approved the judgment of the county court, which had approved the commissioner's report.

■ Dora urges that the circuit court erred in requiring her to pay over to the executor under the will sums previously distributed to her while acting as administratrix. In support of this argument, she relies on Ellwanger v. Ellwanger's Adm'r, 278 Ky. 584, 129 S.W.2d 127, and the cases cited therein. These cases support the contention that the appointment of Dora was voidable and not void. We agree that her appointment as administratrix was voidable, not void.

The question remains as to whether Dora's hasty acts in making distribution were lawful and should remain valid and effectual. Reliance is had on KRS 395.330 which provides:

"Where an order of administration is set aside or letters of administration revoked, or where any executor or administrator is removed, or the will under which he acted is declared invalid, all previous sales of personal estate made lawfully by the executor or administrator and with good faith on the part of the purchaser and all other lawful acts done by the executor or administrator, shall remain valid and effectual."

■ The acts of Dora in making distribution at the time shown were in plain violation of three statutes: KRS 395.190, 396.010, and 386.180. Therefore, any dis-

tribution to her was unlawful. The statute says that *lawful* acts shall remain valid and effectual.

 Dora further argues, citing Preston v. Second National Bank of Paintsville, 250 Ky. 673, 63 S.W.2d 774, that the burden of proof in the circuit court is upon the one who attacks the county-court settlement. This rule is sound. However, the contested items in Dora's proposed final settlement were disallowed by the county court, and exceptions were filed by Dora to the order disallowing her claims. On appeal to the circuit court, a judgment was entered approving the county-court's judgment. An appeal taken from the county court to the circuit court is tried de novo. KRS 25.070 and CR 72.03. The burden of proof was upon Dora. The Preston case was a direct attack in the circuit court on a settlement made and approved in the county court—not an appeal as in the instant case.

KRS 395.190 provides: "A personal representative may distribute the estate of a decedent six months after qualification." This statute was construed in Coffee v. Owens' Adm'r, 216 Ky. 142, 287 S.W. 540, where it was said:

"The purpose of the statute is to give creditors a reasonable opportunity to prove up and present their claims, and the administrator who distributes the estate in less than nine months [now six months under the statute as amended] does so at his own risk." Id. 287 S.W. at 542.

Other cases supporting that statutory construction are Albert Neurath & Son v. Dugan's Adm'r, 250 Ky. 601, 63 S.W.2d 769; Miller's Ex'r v. Shannon, Ky., 299 S.W.2d 103; Motch's Ex'r v. Motch's Ex'r, 306 Ky. 334, 207 S.W.2d 759.

 Dora attempts to analogize KRS 395.040 with KRS 395.190 because the word "may" is used in both statutes, and that word has been construed in KRS 395.-040 as permissive and not mandatory. We

cannot agree with this argument. The purpose of KRS 395.190 is to give creditors a reasonable time to prove and file their claims and to prevent a hasty distribution of the estate before ascertaining the amount of the indebtedness against the estate. KRS 395.040 has to do with putting the interests of intestate's relatives before the interests of creditors by giving the former the first opportunity to serve as administrator. We cannot see any analogy in these two statutes. Dora's hasty distribution of the entire estate within thirty days after her appointment without ascertaining the inheritance taxes and the entire indebtedness against the estate, whatever her motive, smacks of a deliberate intention to disregard the plain provisions of the statute.

KRS 396.140 provides:

"When a personal representative pays to a creditor an undue proportion of his demand or to a distributee or devisee a part or all of his share of legacy, under a mistake as to the solvency of the estate or otherwise, he may recover from the creditor, distributee or devisee the amount of the overpayment, with interest."

We construe this statute as providing a remedy for the personal representative in the event of a mistake made under the provisions of KRS 395.190. This statute is not an immunization for violations or mistakes under the other statute. It is merely remedial. We, therefore, conclude that the trial court did not err in requiring Dora to return the money distributed to herself.

The next question for determination is the payment of the $300 to Dora for extraordinary services rendered decedent prior to his death and extraordinary services rendered the estate after his death, the amounts being disallowed in both the county court and the circuit court. KRS 396.-010 provides:

"(1) No claim against the estate of a decedent shall be allowed or paid unless the claim is verified by the affidavit of

the claimant, or if he is out of the state, by his agent, or if dead, by his personal representative. The affidavit shall state that the claim is just and, to the best of the affiant's knowledge and belief, whether any part of the claim has ever been paid, or there is a set-off or discount against it, or any usury therein, and if so, when the payment was made, when the set-off or discount was due, and the amount of the payment or usury.

(2) If the claim is not an obligation signed by the decedent or a judgment, it shall also be verified by a person other than the claimant, who shall state in his affidavit that he believes the claim to be just and correct, and give the reasons why he so believes.

(3) Verification does not dispense with other proof required by law."

KRS 386.180 provides:

"(1) Trustees of estates shall receive for their services as such a commission of five percent of the income collected by them, payable as the income is collected. They shall also receive an annual commission of one-fifth of one percent of the fair value of the real and personal estate in the care of the fiduciary, or, at the option of the fiduciary and in lieu of the annual commission on principal, a commission which shall not exceed five percent of the fair value of the principal distributed, payable at the time the principal is distributed. In the absence of some provision, agreement, or direction to the contrary, the commission on income shall be paid out of the income from the estate, and the commission on principal shall be paid out of the principal of the estate.

(2) However, upon proof submitted showing that the fiduciary has performed additional service in the handling of the estate in his care, which has been unusual or extraordinary and not normally incident to the care and management of an estate, the court may allow to the fiduciary such additional compensation as is fair and reasonable for the additional services rendered. This additional compensation shall be payable out of principal or income, or part out of principal and part out of income, as the court directs."

Under the provisions of these two statutes, it was mandatory upon Dora to prove her claim for extraordinary services rendered before her father's death, not only by her own affidavit but the affidavit of a third person, and in addition to such proof, the claim for extraordinary services had to be allowed by the court before payment. Appellant comes into court without complying with the plain provisions of these three statutes, and requests the court to allow her $300 for extraordinary services. Before the final judgment in the circuit court, no such verified claim was filed and no order made by any court allowing Dora for extraordinary services. The commissioner in the county court even suggested that her claim for extraordinary services would be allowed if she would file proof of claim. She ignored the suggestion and failed to make any attempt to comply with the statute or the suggestion of the county court. The burden of proving her claim was upon Dora. See KRS 25.180; Rose v. Ratliff's Adm'r, 237 Ky. 645, 36 S.W.2d 43; Skinner v. Morrow, Ky., 318 S.W.2d 419; and Combs v. Combs, 380 S.W.2d 227. We therefore conclude that the trial court properly disallowed appellant's claim for $300.

The next question for determination is the attempt of appellant to file her proof of claim for extraordinary services after the judgment was entered in the circuit court. In support of this argument, appellant relies on CR 15, which provides in part that: "Leave [to amend] shall be freely given when justice so requires." It will be noted that the county court suggested to Dora that leave would be granted her to file verified proof of claim and that her claim would be allowed if she complied with the statute, but she did not accept the leave granted her and declined to amend

her claim in the county court or in the circuit court until after the entry of judgment in the circuit court. Certainly, the trial court did not abuse its discretion in denying appellant's motion to file proof of claim and amend the judgment. CR 52.02 and 49 C.J.S. Judgment § 259.

The judgment is affirmed.

All concur.