David J. BENNETT, Administrator of the Estate of Deborah A. Orenduff, Deceased, Appellant,

v.

Michael A. NICHOLAS, PH.D.; Aribbe A. Martin, M.D.; and Baptist Healthcare Systems, Inc., d/b/a Western Baptist Hospital, Appellees.

No. 2006–CA–001467–MR.

Court of Appeals of Kentucky.

Sept. 7, 2007.

Rehearing Denied Feb. 5, 2008.

Len W. Ogden, Jr., Paducah, KY, for appellant.

Harry K. Herren, Elizabeth Ullmer Mendel, Rebecca L. Didat, Woodward, Hobson & Fulton, L.L.P., Louisville, KY, for appellee Michael A. Nicholas, PH.D.

E. Frederick Straub, Jr., James R. Coltharp, Jr., Whitlow Roberts Houston & Straub, PLLC, Paducah, KY, for appellee Aribbe A. Martin, M.D.

L. Miller Grumley, Bradley & Freed, P.S.C., Paducah, KY, for appellee, Baptist Healthcare System, Inc., d/b/a Western Baptist Hospital.

Before ACREE, HOWARD and LAMBERT, Judges.

## OPINION

HOWARD, Judge.

David J. Bennett, as administrator of the estate of the decedent, Deborah A. Orenduff, appeals the dismissal by the McCracken Circuit Court of his malprac-

tice claims against Dr. Michael A. Nicholas, Dr. Aribbe A. Martin and Western Baptist Hospital. For the reasons set out herein, we reverse and remand.

After Deborah A. Orenduff committed suicide, her nephew, David J. Bennett, petitioned the McCracken District Court for appointment as administrator of her estate and was granted such appointment. He then brought this wrongful-death action in the name of the estate, claiming that the defendants' alleged malpractice caused his aunt to take her own life. In the course of the litigation, the defendants deposed Deborah's former husband, Richard Orenduff, who testified that before she died, she had executed a will appointing him as executor of her estate, and that he had that will in his possession.

The appellees then all filed motions to dismiss the complaint, on the grounds that David J. Bennett was not the proper representative of the estate and therefore lacked standing to bring this lawsuit. The appellant responded and also requested leave to petition the district court for probate of the newly found will and for appointment of an appropriate executor, after which he would seek leave to amend the complaint in this case to reflect the appropriate change in parties. The circuit court, after considering the record, including the depositions taken and various affidavits and documents filed by the parties, granted the motions to dismiss. This appeal followed.

Under Kentucky law, a wrongful-death action can only be brought by the estate's lawful representative, either the executor or administrator. KRS 411.130(1).[1] The appellant has not, in this action, contested the validity of the will produced by Mr. Orenduff. It appears, therefore, that it should be probated and Mr. Orenduff appointed executor of the estate. However, for the reasons set out below, it does not follow that the lawsuit filed by Mr. Bennett on behalf of the estate should be dismissed.

We note first of all that while the motions to dismiss were filed pursuant to CR 12.03 and the circuit court's order was styled an "Order Dismissing Complaint," this was, in fact, a summary judgment. The circuit court allowed the parties to file various depositions and affidavits in the record before ruling on the motions to dismiss. CR 12.03 states, "If, on such motion, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment...." *See also Moss v. Robertson,* 712 S.W.2d 351 (Ky. App.1986)

Summary judgment, of course, is appropriate only when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. In considering a motion for summary judgment, all factual inferences must be drawn in favor of the party opposing the motion. *Fischer v. Jeffries,* 697 S.W.2d 159 (Ky.App.1985); *Mitchell v. Jones,* 283 S.W.2d 716 (Ky.1955). A summary judgment should be granted "[o]nly where all the evidence, viewed in a light

---

1. The appellant correctly points out that the proceeds of a wrongful death action go not to the estate, but to the kindred of the decedent, as specified in KRS 411.130(2). However, the action must be brought by the personal representative of the estate, for the benefit of those statutorily designated persons. Furthermore, to the extent that the complaint in this case includes a claim for pain and suffering, or other claims that would have arisen during Mrs. Orenduff's lifetime and survived her death pursuant to KRS 411.140, those claims would be for the benefit of the estate, and that statute provides that they also must be brought by the personal representative.

most favorable to the opposing party, manifestly reveals that no genuine issues of material fact exist." *Poe v. Rice,* 706 S.W.2d 5, 6 (Ky.App.1986).

The circuit court did not explain its reasoning, but granted the motions to dismiss in a two-sentence order. The appellees have attempted to defend the dismissal by arguing that either the Appellant, David J. Bennett; his attorney, Len W. Ogden, Jr., Esq.; and/or other non-party family members knew of the will of the decedent, Deborah A. Orenduff, before the appellant filed his petition for appointment as administrator; and that this knowledge makes Bennett's appointment as administrator void *ab initio,* rather than merely voidable, so that any action he took under color of the district court order of appointment, including the filing of this suit, was a nullity. We disagree and reverse the circuit court order.

There is considerable confusion in the briefs concerning who knew of the will, so a review of the record on this issue is necessary. It is clear that Richard Orenduff, the deceased's ex-husband with whom she lived the last two years of her life, knew of the will. He testified to such himself and produced the will. It is equally clear and far more significant that there was absolutely no evidence presented that the appellant, David J. Bennett, the court-appointed administrator, had any such knowledge.

As to the other relatives, Mr. Orenduff testified that he had a telephone conversation with David C. Bennett, David J. Bennett's father and the brother of the deceased, about the will and that David C.

Bennett told him to take it to the lawyer, Mr. Ogden. Mr. Bennett, in his affidavit, denied that such a conversation ever took place or that he had any knowledge of the will. So the evidence as to David C. Bennett can only be described as contested. The second brother, William K. Bennett, filed an affidavit stating that he had no knowledge of the will, and there is no evidence in the record to the contrary.[2]

The appellees have represented that Mr. Orenduff testified that he took the will to Mr. Ogden, but this is not entirely accurate. His initial deposition testimony was, "No, I think he's got it here and it will have the date when we got it done." After a break in which Mr. Ogden apparently looked for the will and couldn't find it, Mr. Orenduff then stated, "I can produce that and I will get it to Mr. Ogden." Finally, Mr. Orenduff submitted an affidavit, in response to the motion to dismiss, in which he stated,

At the request of Mr. Ogden, when I returned home after the deposition, I looked to see if I still had the original Last Will and Testament of Deborah Ann Orenduff. I found the original Will at my home, a copy of which was not delivered to Mr. Ogden until March 15, 2006, . . .

Based on having found the original Will at my home and after further thought in an effort to remember and recollect, I feel sure that I neither took Deborah A. Orenduff's Will to Mr. Ogden before March 15, 2006, nor told him about its existence prior to my deposition taken by the Defendants on March 3, 2006.[ [3] ]

**2.** It is not clear that David C. Bennett or William K. Bennett's knowledge or lack of knowledge, although argued by the parties, is of any significance, as they were not parties to this action in any court. They are mentioned here only for completeness.

**3.** At least one of the appellees has argued that Mr. Orenduff's affidavit should not be considered, as it contradicted, rather than merely explained, his deposition testimony, citing *Lipsteuer v. CSX Transportation, Inc.,* 37 S.W.3d 732 (Ky.2000). Whether or not this may be so as to other assertions contained in

Mr. Ogden also filed his affidavit, denying that the will had been delivered to him or that he had any knowledge of it prior to Mr. Orenduff's deposition. Thus, far from the evidence being uncontradicted that Mr. Ogden knew of the will, it can fairly be stated that there is no credible evidence of record that Mr. Ogden had such knowledge at the time David J. Bennett was appointed administrator of the estate. The lack of any proof that Mr. Ogden knew of the will is significant, as the appellees' next step in their argument is to assert that his knowledge, as attorney, should be imputed to his client, David J. Bennett. Obviously, knowledge that an attorney does not possess cannot be imputed from him to his client.

The appellees next argue that even if the appellant lacked actual knowledge of the will, he should be deemed to have had constructive knowledge of its existence. This argument fails for at least two reasons. First, the record is void of any facts, known to the appellant, that would lead him to expect that Ms. Orenduff had a will. Second, the appellees cite no law to support their argument that the mere failure to investigate, without such facts, will be deemed to constitute constructive knowledge.

█ Constructive knowledge (or usually, "constructive notice") is a legal concept by which notice of some fact is imputed to one who, *by his knowledge of other facts*, should have expected the fact in question to be true, or at least have conducted further inquiry. In each of the cases cited by the appellees, the necessity of facts giving rise to the duty to investigate further is expressly stated. For instance, in *Mitchell v. First National Bank of Hop-*

*kinsville*, 203 Ky. 770, 263 S.W. 15, 17 (1924), the court stated,

If a person has knowledge of such facts as would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry, and he fails to do so, he is chargeable with the knowledge which by ordinary diligence he would have acquired.

█ Yet in this case, appellees have cited no facts known to the appellant from which he should have expected that his aunt had a will. There is no evidence of record whether or not she ever previously had a will; whether it was customary in that family to make wills; whether she had talked about making one or whether she had been advised to do so. The claim is that the appellant should have gone to Mr. Orenduff and asked him if he knew whether or not his ex-wife had a will, but the record is void of any evidence explaining why he would have thought that to be appropriate or necessary.

It is further significant that none of the cases cited to us, nor any others that we have found, have ever imposed on a party constructive knowledge of the existence of an unrecorded will. The closest case on point is one cited by the appellees regarding constructive notice, *Wides v. Wides' Ex'r*, 299 Ky. 103, 184 S.W.2d 579 (1944), and it tends to support, by analogy, the opposite conclusion. In that case, it was argued that a second wife should be held to have constructive notice of her husband's divorce settlement agreement with his first wife, in which he agreed to make a will providing for the first wife. The court rejected this argument, first distinguishing the situation from those involving constructive notice of recorded instruments and then stating:

that affidavit, it clearly is not the case with regard to the statements quoted above, which

do no more than explain and clarify his deposition testimony.

Nor do we think the circumstances show any negligence on the part of the second wife to investigate the judgment record in the circuit court for some unusual provision affecting her husband's property rights.

*Id.*, at 584.

To impute constructive knowledge of this will to the appellant requires both drawing factual inferences against him, rather than in his favor, as a court is required to do before granting a summary judgment against him, and also extending the law of constructive notice to an area where it has never before been applied. The first is contrary to the law, and we are offered no legal or policy arguments for the second.

■ However, there is an even greater problem with the appellees' argument supporting the dismissal in this case. The second prong of that argument is that, if the appellant can be said to have had either actual or constructive knowledge of the will, his appointment is therefore *void*, and all acts taken by him as administrator, including the filing of this lawsuit, are nullities. We neither have been cited, nor can we find, any law to this effect. In fact, the established law is to the contrary.

KRS 395.040 governs the appointment of administrators when there is no will, and subsection (4) of that statute reads,

If a will is afterwards produced and proved, the administration shall cease, and the court may grant a certificate of the probate of the will, or, in the proper case, letters of administration with the will annexed.

It is not unusual for a will to be discovered after an estate is opened as intestate, nor for a later will to be found after an earlier one has been probated. The legis-lature specifically recognized this possibility with the above provision. Yet nothing in this statute suggests that the earlier appointment of the administrator would be considered void, nor that the actions taken by the administrator under the authority of the prior court order would not stand. Rather, KRS 395.330 specifically provides,

Where an order of administration is set aside or letters of administration revoked, or where any executor or administrator is removed, or the will under which he acted is declared invalid, all previous sales of personal estate made lawfully by the executor or administrator and with good faith on the part of the purchaser and all other lawful acts done by the executor or administrator, shall remain valid and effectual.

Neither are there any cases holding or even suggesting that such an appointment would be void *ab initio*. Rather, in *Rabold v. Roberts*, 444 S.W.2d 536 (Ky.1969), the court held, in this very situation, where an administrator was appointed to handle an apparently intestate estate and a will was later found, that the appointment was "voidable, not void." *Id.* at 538. The appellees make much of the fact that the administrator in *Rabold* was apparently unaware of the will at the time she was appointed (as was Mr. Bennett, so far as the record in this case reflects). However, there is nothing in the language of that opinion which would suggest that the court thought her ignorance of the will to be significant, or that the result would have been different and the appointment would be void *ab initio*, if she had such knowledge.

In *Ellwanger v. Ellwanger's Adm'r*, 278 Ky. 584, 129 S.W.2d 127 (1939), a creditor went into court the very day after the decedent died and was appointed adminis-

trator, apparently without notice to any of the heirs. Nonetheless, the court stated,

> The appointment of Johnson as administrator on June 14th, the day after John G. Ellwanger died, even though made with no small degree of haste, and which haste is not explained in the record, was voidable and not void.

*Id.* at 128.

Indeed, the only case cited to us in which an appointment of a personal representative has been declared *void* illustrates why the appellant's appointment in this case is only *voidable.* In *Landrum v. Louisville & Nashville Railroad Co.,* 290 Ky. 724, 162 S.W.2d 543 (1942), a second appointment of an administrator, made without knowledge by the court that a previous administrator was already in place, was held to be void. The court first held that once the appointment of a personal representative had been made, the county [now district] court lacked jurisdiction to appoint a successor representative until the first appointee was removed from office. The court in *Landrum* noted that it appeared that the first appointee may well have been guilty of fraud in obtaining his appointment, but quoted 21 Am.Jur. 450, § 127, to state,

> ... as long as letters of administration previously granted are still in force, a second grant of letters of administration is void and open to collateral attack, and it has been held that this is true although the letters first issued were fraudulently obtained.

*Landrum, supra,* at 545.

The court in *Landrum* then held that the first appointment, though possibly fraudulent, was not open to collateral attack, and cited 23 C.J. 1053, § 142, to indicate that the first appointment was

merely "voidable, although not void." *Id.* at 545.

■ The reasons for such a rule are obvious. First of all, the representative appointed by the court carries with him, until he is removed, the authority of the court order appointing him. Persons dealing with him have the right to assume that his authority is valid. Secondly, if when he is removed, all acts that he has performed on behalf of the estate become nullities, as is urged in this case, sales of both real estate and personalty would have to be set aside. Judgments both for or against the estate would have to be vacated. What of legitimate debts of the estate that had been paid? Undoubtedly, such a rule would cause far more harm to innocent persons than the opposite rule. But we need not rely on policy considerations for our ruling. The law is clear, in both the statutes and the cases cited above. A duly appointed representative of an estate, even if he should not rightfully be in that office, serves with authority until he is removed; his appointment is voidable, not void.

The appellees argue that "Kentucky is committed to the doctrine of 'testatorial absolutism,'" by which "the privilege of the citizens of the Commonwealth to draft wills to dispose of their property is zealously guarded by the courts...." *Bye v. Mattingly,* 975 S.W.2d 451, 455 (Ky.1998); and that, "it is the duty of the court to permit the named executor to qualify unless he is disqualified under the statu[t]e, or other good and substantial reasons be clearly established." *Kuechler v. Rubbathen,* 266 Ky. 390, 99 S.W.2d 193, 195 (Ky. 1936). These are accurate statements of the law, but they miss the point. The will produced by Mr. Orenduff, if valid, should be probated and Mr. Orenduff, if he is

otherwise qualified, should be appointed executor of the estate. But David J. Bennett's appointment was "effective with the signing of an order by the [district] judge." KRS 395.105. His administration will not cease until the putative will is "produced and proved[.]" KRS 395.040(4). This has not occurred. Mr. Bennett remains the duly appointed administrator of the estate of Deborah A. Orenduff.

■ Appellees' motions constituted a collateral attack on the district court's order. However, the order appointing Mr. Bennett is "not subject to collateral attack." *Riedinger v. Murphy,* 337 S.W.2d 22, 24 (Ky.1960); *Landrum, supra.*

We believe that the circuit court should have granted the motion of the appellant for leave to seek probate of the will and the appointment of an executor in the district court and then for leave to file an amended complaint, substituting parties in this action.

The Order Dismissing Complaint entered by the McCracken Circuit Court is hereby reversed and set aside. This matter is remanded to the circuit court for further proceedings consistent with this opinion.

ALL CONCUR.