219 P.2d 1048

**COX et al. v. MACKENZIE.**

No. 5108.

Supreme Court of Arizona.

June 26, 1950.

M. L. Ollerton, of Phoenix, attorney for appellants.

Jennings, Strouss, Salmon & Trask, J. A. Riggins, Jr., Henry S. Stevens, Burr Sutter, all of Phoenix, attorneys for appellee.

KELLY, Superior Judge.

In the court below judgment was rendered against defendants for the recovery of the amount of a claim of plaintiff as a creditor presented in the course of settlement of an estate of which the individual defendant and appellant was administrator and his corporate co-party the surety upon his official bond. That judgment is here for review. The circumstances out of which this litigation has grown are unfortunate and extraordinary.

In years past, the elapsed time being unimportant for no questions of limitations or of laches enter into the cause, the individual defendant became administrator of a decedent's estate, an ample one with assets adequate for the payment of all claims and a substantial residue over to the heirs. At the death of decedent an action against him was pending for a debt alleged to be owing to plaintiff. A claim was presented to the administrator, reject-ed, and, with his endorsement of its rejection, filed by him with the clerk among other papers of the record of the probate proceeding. The abated action for the debt was revived against the administrator by the timely substitution of him for the decedent as party defendant. Both the civil action for the debt and the probate proceeding were pending causes before the Superior Court of Maricopa County, but in different divisions thereof.

In this posture of the two matters, one in probate and one on the law side of the court, the administrator filed his verified final report alleging "that all of the claims against the estate have been paid," and prayed for the settlement of his account. Separately, but upon the same day, he petitioned for distribution of the estate and prayed to be discharged from his trust. The requirements of the Probate Code as to order for notice, and notice, were complied with, and upon the hearing the account was settled and petition for distribution granted by separate orders, and soon thereafter upon the production of receipts from the distributees the administrator was formally discharged.

Meanwhile the pending action by the plaintiff against the administrator was undisposed of. It was dismissed upon plaintiff's motion, and this action begun against the former administrator and his surety for the loss sustained by reason of the negligent conduct of his duties in his official capacity in failing to disclose to the pro-

bate court the pendency of the action upon the rejected claim, and in making the averment in his final report that "all claims against the estate have been paid," thereby depriving plaintiff of the fruits of his claim, and of the benefit of Sec. 38-1320, A.C.A.1939, requiring that a fund shall be set up to provide for the payment of any claim made but not yet established, pending the issue of the processes by which it might be determined whether the claim should or should not be allowed for payment from the estate.

At the threshold of the proceedings below the point was raised, and it is still the main reliance of appellant, that the decrees of settlement of account and of discharge in the probate court are conclusive and have the effect of closing the book on all of his proceedings as administrator, and that they foreclose plaintiff of his remedy in this action at law. The plea was determined adversely to him, and in the trial upon the merits a judgment was rendered which by inference is tantamount to a determination that the claim as originally presented should have been in part allowed. Not by open concession, but from the stress upon the principle of res judicata and the implied abandonment of argument upon the factual merits, it will be considered that the claim as made against the decedent and filed with the administrator was a just one to the extent of the judgment rendered in this proceeding, should have been allowed for that amount, and

paid. The plaintiff here will thus, unless he prevails upon this appeal, have been deprived of that to which he is in good conscience entitled. Plaintiff makes no allegation of fraud in any of his adversary's proceedings. He asserts no more than that the administrator made a mistake in reporting to the probate court, that he was negligent, but that the error was one in his official capacity, the burden of which he and his surety should bear rather than that it should fall upon the unpaid creditor.

From the very nature of their office courts may be said always to be prone to mould their pronouncements upon the law in conformity with the highest concepts of justice and morality. Indeed it may be said that our whole superstructure of jurisprudence is built upon that foundation. Pleas in law which lead to a result at variance with those principles are scanned with the greatest care lest they become not guides, but rather bars, to judgments that have the support of an approving conscience.

It is conceded here that the plaintiff had no personal notice or knowledge of the filing of the administrator's final report. It is likewise conceded that notice of hearing was given as the law requires it to be given. The forum existed, and ample procedures, for the protection of every adverse right to be asserted. Certainly the creditor with a rejected claim upon which an action was pending had a standing in the probate court to object to

the settlement of the administrator's account and to demand that a fund be sequestered, before the distribution to heirs, sufficient for the protection of his rights; e. g., see In re Slaughter's Estate, 37 Ariz. 124, 289 P. 989. A positive duty is imposed upon the administrator, Sec. 38-1305, to report allowed claims; a duty is cast upon him, Sec. 38-1016, to make a statement of his action upon all claims, which as to this one was substantially performed by the filing of the claim itself with his endorsement of its rejection. But nowhere do we find enjoined upon the administrator the duty actively to move for the sequestration of a fund to pay those claims of a contingent nature of whose existence he may not even know, or claims whose foundation in fact he resists and denies. To fail to do so may be ever so negligent; but considering such report as a duty the jurisdiction of the court did not depend upon its performance. It being a time honored maxim that the law rewards the diligent but not the slothful, a conclusion that the creditor should move to guard his rights is more logical than one that he should wait for his adversary to do it for him.

▮▮▮ It is well established in Arizona and in many of the western states which have patterned their probate procedure after California that a decree in the probate court has all of the conclusiveness inherent in a judgment of a common law court. Varnes v. White, 40 Ariz. 427, at page 431, 12 P.2d 870; In re Estate of Sullivan, 51 Ariz. 483, at page 490, 78 P. 2d 132; Dockery v. Central Arizona Light & Power Co., 45 Ariz. 434 at page 443, 45 P.2d 656, and cases cited; In re Bell's Estate, 70 Wash. 498, 127 P. 100. Such a judgment may not be collaterally attacked. Henderson v. Towle, 23 Ariz. 377, 203 P. 1085; Tube City Mining & Milling Co. v. Otterson, 16 Ariz. 305, 146 P. 203, L.R.A. 1916E, 303. A collateral attack upon a judgment is an effort to obtain another and independent judgment which will destroy the effect of the former judgment. Tube City Mining & Milling Co. v. Otterson, supra. The rule is laid down in Arizona that, "where an action has for its primary purpose the obtaining of independent relief, and the vacating or setting aside of a judgment is merely incidental thereto, such action is not a direct, but a collateral, attack upon the judgment." Dockery v. Central Arizona Light & Power Co., supra [45 Ariz. 434, 45 P.2d 660]. The present action clearly is a collateral attack upon the decrees in the probate court settling the account of the administrator and discharging him. The judgments that the administrator has faithfully performed his duty and is discharged from his trust still stand. They will stand as a verity if the relief asked for by plaintiff in this action be granted; but not without the contrary judgments being at war with each other, the first saying the administrator has performed and is discharged, the second saying with Dr. Johnson's emphasis,

"Not so, sir; he is a liar and a cheat." Inherent in the principle that a final judgment may not be thus discredited is the requirement that the court rendering it had, in the language of the court in Brecht v. Hammons, 35 Ariz. 383, 278 P. 381, 382, "(a) jurisdiction of the subject-matter of the case, (b) jurisdiction of the persons involved in the litigation, and (c) jurisdiction to render the particular judgment given. If these three matters concur, even though the judgment be erroneous or wrong, so that it could be reversed on appeal or set aside on direct attack, it is not void as against collateral attack." This language is quoted in Dockery, which involved an order in probate of much more injurious implications to the parties affected by it than any to ensue to plaintiff herein.

■ Fraud and allegations of fraud are absent here; the administrator disputing the claim and occupying an adversary position with regard to it cannot well be said to be a fiduciary of the claimant; and the negligence of the defendant, to use the euphemistic phrase of plaintiff, was intrinsic to the case, bringing it within the rule of U. S. v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93, which in its field is with practical unanimity accepted in all jurisdictions as authority. That case deals with fraud. Mistake comes within the operation of the same rule. Federal Farm Mtg. Corp. v. Sandberg, Cal.Sup., 215 P.2d 721.

There are indeed many cases in the Arizona reports alone whose facts are of appealing force to generate the wish that there might be somewhat more elasticity in the rule that bars a collateral attack upon a final judgment. Latham v. McClenny, 36 Ariz. 337, 285 P. 684, is one of them, where it will be noted that our court even in the face of allegations of the most flagrant acts of dishonesty on the part of an administrator felt obliged to follow the rule to the breaking point and then departed from it only to permit an extremely unusual relief against egregious and scandalous fraud where the party committing it occupied a fiduciary relation to the injured party, was under a positive duty to speak the truth, and in effect had stolen the estate entrusted to him by the court to administer. The rule of res judicata perhaps more clearly than any other gives point to the distinction between pronouncements made of the law from the bench and those from the pulpit. In an imperfect world the office of courts is indispensable to peace; perfection in the operation of their processes is no more to be looked for than the same quality to be found in the nature of man, more especially when persons to be affected by their judgments and noticed to appear abstain from asserting their rights; but without finality their judgments would be futile and end in no less than utter confusion. The rule is founded upon considerations of practical necessity. The reasons for

it, amplified in a multitude of decisions, all rest in the public good. "The end sought is peace with justice and when courts have given, and litigations have had, the benefit of judicial instrumentalities throughout such a course, the finality, whether right or wrong from a moral standpoint should, in general, stand as an unimpeachable compact of peace between them and society. Interest reipublicae, ut sit finis litium." Laun v. Kipp, 155 Wis. 347, 145 N.W. 183, 190, 5 A.L.R. 655.

■■ It is urged that there was a conflict between the powers of the probate court and the law court in which the action was pending, and that the decree had the effect of ousting the law court of its jurisdiction, and that its act in so doing was beyond its power. But there can be no doubt that howsoever erroneous its decree may have been, it had the jurisdiction to do precisely what it did—i. e., settle the account. Its act had no effect upon the law court proceeding except to render its question moot, a result readily to be avoided by diligence in the pursuit of procedures available in the probate court. It may further be noted that the civil court was not vested with that plenary control over the subject matter of the litigation common to a law court. It could render no judgment that the claim must be paid, nor subject any property to process for the payment of the debt, but in effect do no more than make return of the result of its inquires to the probate court. Sec. 38-

1011. For all practical purposes it acts with regard to the disputed claim as an arm of the probate court.

The case of Chandler v. Probate Court of Kootenai County, 26 Idaho 173, 141 P. 635, is in its facts very similar to the present one. The form of the action differs from ours, but the decision is clearly parallel with the conclusion reached here somewhat unwillingly and only after a review of numerous authorities indicated the same result. In Re Thurnell's Estate, Cal.App., 19 P.2d 14, at page 19, this language is used: "* * * We are not unmindful of the fact that if said petition had alleged actual payment of said claims, and the court had found in accordance therewith, though erroneously, appellant could not properly assert that the court lacked jurisdiction to make the finding." Both of these last cited decisions were written by pro tem. judges, a circumstance having the natural tendency to detract from their weight; but yet it must be noted that the California case reached the Supreme Court for hearing, that the opinion has not been modified, and that it represents the law of that state as applied to facts that are not altogether dissimilar to those present here.

Benning v. Superior Court, 34 Cal.App. 296, 167 P. 291, 292, deals with facts that are not exactly those of this case, but so like them that the principle it announces is applicable. A quotation from it will suffice almost to demonstrate that the con-

clusion herein, arrived at from a consideration of the rationale of our many Arizona cases in these fields, is correct.

In that case an approved claim had been paid in part only, leaving a balance due. While this balance was still unpaid the administrator filed his final report alleging, inter alia, that all the debts of said deceased had been fully paid, and that said estate was ready for distribution. After due notice an order was made settling said account and finding that all debts of the estate had been paid, and a decree of distribution was made and entered. Said final account and order made no mention of the balance still unpaid to the creditor. Subsequently, after time for motions, appeal, or other direct attack had elapsed, a petition was filed to set aside the decree of distribution. It was overruled upon the ground that the decrees of settlement of the account and of distribution had become final; and it was the conclusiveness of those decrees in those circumstances that was the question with which the appellate court was dealing.

After setting out sections of the Code of Civil Procedure which in substance find their counterpart in our Probate Code, the court says:

"These provisions simply mean that the order settling the final account and decreeing distribution of the estate is placed upon the same footing as an ordinary judgment in a civil action. In support of this statement, authority is hardly needed, but we may refer to the carefully considered case of Bacon v. Bacon, 150 Cal. 477, on page 486, 89 P. 317, on page 320, wherein, in reference to Section 1666, supra, it is said:

" 'The provision may reasonably be interpreted to mean no more than that the decree of distribution should have the same force and effect as other final judgments; that is to say, that it should not be subject to collateral attack, but only to direct attack on appeal, or as otherwise provided by law.' "

And later in the report this language appears: "If false testimony was presented at the hearing, and if upon such testimony the court based its decision, nevertheless the judgment was duly made, and must stand unless an appeal is made therefrom. * * *"

And compare this language with that in Dockery, 45 Ariz. at page 454, 45 P.2d at page 664: "There are allegations in the complaint which, if true, would have justified the probate court in refusing to approve the final account of the administratrix * * * but * * * so long as the order stands, plaintiffs may not maintain an action for damages against the company for the acts of negligence alleged in the complaint which resulted in the death of decedents."

The Benning case represents settled law, and has been frequently cited approvingly

by the courts of California and of other jurisdictions in support of their own determinations, the latest report coming to notice being Federal Farm Mtg. Co. v. Sandberg, supra, a case in which there is in the facts a complete analogy to those in ours, and in which the quotations from other cases to support the court's conclusions are directly apropos to every question confronting us here and they lend the decision a very particular weight.

The judgment is reversed, and the cause remanded with directions to dismiss the complaint.

LA PRADE, C. J., and UDALL, STANFORD and DE CONCINI, JJ., concur.

Justice M. T. PHELPS having disqualified himself, the Honorable Henry C. KELLY, Judge of the Superior Court of Yuma County, was called to sit in his stead.