647 P.2d 649

**Rebecca Marion BILL, a minor, By and Through Myrna BILL, her parent, natural guardian and next friend, Plaintiff-Appellant,**

v.

**Paul Ernest GOSSETT, Defendant-Appellee.**

**No. 1 CA–CIV 5111.**

Court of Appeals of Arizona, Division 1, Department B.

May 27, 1982.

Mark S. Whitney, Mesa, for plaintiff-appellant.

T. Clark Dove, Phoenix, for defendant-appellee.

## OPINION

GRANT, Judge.

This appeal is from an order dismissing a paternity action brought by Rebecca Marion Bill, a minor, through her mother Myrna Bill, against Paul Ernest Gossett. Gossett filed a motion to dismiss based upon a plea of res judicata, alleging that a final judgment disposing of plaintiff's rights in this matter had been entered in Maricopa County Superior Court, Cause No. DR–99196.

The former case, also a paternity suit, was filed by the Maricopa County Attorney in the name of the State of Arizona against Paul Ernest Gossett. The complaining witness was Myrna Bill, who alleged that Paul Ernest Gossett was the natural father of the child Rebecca Marion Bill. In that case a stipulation was entered between Myrna Bill and Paul Ernest Gossett by which Myrna Bill agreed to answer "relevant and material questions posed to her on the issue, the subject of this action, being paternity," put to her by a polygraph examiner. The stipulation stated that if the polygraph examiner determined that Myrna Bill was deceptive in answers to these questions, the case would be dismissed with prejudice as to the defendant, Paul Ernest Gossett. If Myrna Bill was determined not to be deceptive, the court would find that Gossett was Rebecca's father and order a support hearing. The stipulation was signed by the deputy county attorney, Gossett, and Myrna Bill in her capacity as complaining witness. Although filed with the clerk's office, the stipulation was not signed, or formally approved, by the court. The only question asked Myrna Bill was whether, between the possible dates of conception, she had sexual intercourse with any man other than Paul Gossett. She answered no. Two polygraph examiners gave unsworn statements that she was not being truthful when she answered the questions. Following the examiners' determination that Myrna Bill did not satisfactorily pass the polygraph examination, the county attorney filed a motion to dismiss which was granted and the case was dismissed with prejudice.

Gossett's motion to dismiss in the present paternity action asserted that the prior dismissal with prejudice in his favor is res judicata, preventing the child from relitigating the issue of paternity. The trial judge agreed and dismissed Rebecca Bill's complaint. This appeal was timely filed.

Appellant's primary contention is that she should not be bound, in this action, by the judgment of appellee's non-paternity in the former suit. Appellant argues that in the absence of evidence showing the stipu-

lation employed in the first action was reviewed and approved by that court, it was error for the trial court in the present case to dismiss her complaint based on appellee's plea of res judicata. In support of her claim that the stipulation required court approval before the former action could have been properly terminated, appellant cites A.R.S. § 12–849(G), which states:

Any action commenced under this article shall be terminated by agreement and compromise only when the court has approved the terms of such agreement and compromise.

Appellant characterizes the stipulation in the former action as an unapproved agreement and compromise, which would make it an inadequate basis for termination of that suit. Appellant claims that failing evidence of such court approval, her interests as a minor child were left unprotected, exactly the problem the statute was intended to prevent. Specifically, she asserts that neither she nor her mother were made a party to the former action, that she was not represented by counsel, and that she had no guardian *ad litem*. Appellant therefore concludes that the former judgment of nonpaternity, being incorrectly entered, cannot be considered res judicata as to her in the present case.

On the other hand, appellee argues first that the stipulation did not constitute an agreement and compromise under A.R.S. § 12–849(G). Rather, appellee contends, "[i]t was an agreement between the State of Arizona, Bill and Appellee, that the ultimate factual issue, whether Appellee was or was not Appellant's father, was to be determined [sic] by the means of a polygraph examination rather than by the trier of fact, judge or jury." Arguing further, appellee asserts that as the stipulation, the polygraph results, and the motion to dismiss, which recites that the reason for dismissal was the mother's failure to pass the polygraph examination, were all before the trial judge when he dismissed the case, the court implicitly approved the procedure employed. Appellee concludes that because the former dismissal order was properly entered, and because appellant was the real

party in interest therein regardless of her not being a formally named party, the prior dismissal should be binding upon appellant in this action, foreclosing her from relitigating the issue of paternity.

Initially, we must note that what appellant attempts in this appeal is a collateral attack upon the former judgment. A collateral attack is one which primarily seeks independent relief, and only incidentally attempts to vacate or void a former judgment. *State ex rel. Morrison v. McCarrell*, 80 Ariz. 243, 295 P.2d 1088 (1956); *Cox v. Mackenzie*, 70 Ariz. 308, 219 P.2d 1048 (1950); *Cooper v. Commonwealth Title*, 15 Ariz.App. 560, 489 P.2d 1262 (1971). Appellant desires not only to have the prior judgment rendered void, but more importantly to have appellee affirmatively and legally named her father.

■ A judgment may not be attacked collaterally unless it is void, having been rendered by a court lacking jurisdiction, or unless it is the product of extrinsic fraud. A judgment is void if the rendering court lacked personal jurisdiction, subject matter jurisdiction, jurisdiction to render the particular judgment, or if the court acted in excess of its jurisdiction. *Lamb v. Superior Court*, 127 Ariz. 400, 621 P.2d 906 (1980); *Dockery v. Central Arizona Light & Power Co.*, 45 Ariz. 434, 45 P.2d 656 (1935); *Roberson v. Teel*, 20 Ariz.App. 439, 513 P.2d 977 (1973). A judgment may not be collaterally attacked if rendered by a court possessed of jurisdiction, absent extrinsic fraud, even though it may be erroneous or based upon a mistake of law. *Cox v. Mackenzie, supra; Bates v. Mitchell*, 67 Ariz. 151, 192 P.2d 720 (1948). A judgment regular on its face, entered by a court of general jurisdiction, enjoys a presumption of regularity. Once this presumption attaches, a party wishing to attack the judgment must overcome it by affirmative proof of irregularity. *State ex rel. Morrison v. Superior Court*, 82 Ariz. 237, 311 P.2d 835 (1957); *Carnahan v. Carnahan*, 79 Ariz. 371, 290 P.2d 729 (1955). Moreover, where the record is merely silent as to a jurisdictional prerequisite, rather

than where lack of jurisdiction is facially apparent, the absence of such jurisdictional facts from the record will not overcome the presumption of regularity. *Coshatt v. Calmac Manufacturing Corp.*, 124 Ariz. 177, 602 P.2d 845 (App.1979).

■ There is no allegation of extrinsic fraud in the prior case. Appellant has alleged that the failure to comply with A.R.S. § 12–849(G) constitutes a jurisdictional defect in the former paternity proceedings. We disagree. First, the court's action in dismissing the prior case with prejudice evidences an "approval" of the stipulation. Second, and more importantly, in our opinion the evidentiary stipulation does not fall within the "agreement and compromise" language of A.R.S. § 12–849(G). There was, therefore, no need for the court's literal compliance with the express approval requirement found in that section.

Appellant cites *Everett v. Everett*, 57 Cal.App.3d 65, 129 Cal.Rptr. 8 (1976), for the proposition that a prior judgment of non-paternity, entered as the result of an evidentiary stipulation in an action brought by the mother, is not res judicata in a paternity suit subsequently filed by the child's guardian *ad litem*. While we agree that the result of *Everett* is apparently as appellant claims, closer scrutiny reveals the case to be inapplicable to the dispute at hand. In *Everett*, the mother initially brought suit in her own name and entered into a stipulation taking the case from the trier of fact, relying solely on the record for a judicial determination of paternity. The court found the defendant not to be the father, and indicated on the face of the judgment that an evidentiary stipulation had been employed by the parties prior to the adjudication. As an earlier California case had expressly disapproved the use of such stipulations in paternity suits, *Berry v. Chaplin*, 74 Cal.App.2d 652, 169 P.2d 442

(1946), the *Everett* court was able to conclude that the prior judgment was facially defective. By implication, at least, the prior tribunal therefore had no jurisdiction to render that particular judgment because the process of stipulating evidence in paternity suits was not allowed in California. This being the case, the prior judgment in *Everett* was open to collateral attack and impeachment by the child in his later suit.

■ In this case, however, the appellant failed to show the prior judgment to be jurisdictionally defective. We perceive no facial jurisdictional infirmities in that action which would render the resultant final judgment open to collateral attack. There is no question that the trial court was possessed of both subject matter and in personam jurisdiction in this dispute. As we have reasoned above, there is no jurisdictional problem stemming from failure to comply with A.R.S. § 12–849(G). There is also no Arizona law analogous to *Chaplin, supra*, which expressly disapproves use of evidentiary stipulations in paternity proceedings. Unlike *Everett, supra*, therefore, no grounds presently exist upon which we could conclude that use of the stipulation in the prior case rendered that proceeding jurisdictionally unsound. The present case is not in a procedural posture for us to substantively review this issue, and the arguments urged by appellant challenging the adequacy of the stipulation to protect her rights, are therefore of no avail before this court.[1] The presumption of regularity must prevail failing proof of jurisdictional irregularity in the prior proceedings. Consequently, we are compelled to find the prior judgment immune from collateral attack by appellant.

As we have determined that appellant may not collaterally challenge the prior judgment in favor of appellee, our next

---

1. Such arguments might have been appropriately presented upon a direct appeal from the prior judgment or an appeal from a rule 60(c) motion under the Arizona Rules of Civil Procedure. The issue of whether appellant could have appealed that first judgment is not presented for our review in this appeal, and we

therefore refrain from comment upon its resolution. In that regard, however, see our discussion of *State v. Sax* and *State v. E.A.H., infra*.

We similarly do not intend that our resolution of this issue reflect any views condoning the propriety of the evidentiary stipulation procedure employed in this case.

inquiry is whether that judgment is res judicata and binding upon appellant, in effect foreclosing her from forcing appellee to relitigate the issue of paternity. Briefly stated, under the doctrine of res judicata, a valid judgment on the merits bars a subsequent suit involving the same claim or cause of action between the same parties or their privies.[2] *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 n.5, 99 S.Ct. 645, 649 n.5, 58 L.Ed.2d 552, 559 n.5 (1979); 1B J. Moore, Moore's Federal Practice ¶ 0.405[3], at 633 (2d ed. 1980). Our analysis thus partakes of two questions: (1) Does the present suit involve the same claim or cause of action as was litigated in the prior dispute?; and (2) Does appellant's present suit involve the same parties or their privies, as did the previous action?

Arizona case law is clear for purposes of determining whether two lawsuits involve the same claim or cause of action. The determinative test asks whether the claims in each case depend upon the same essential facts for their proof. If the same critical facts must be proven in order to prevail in each case, then the causes of action will be considered to be identical, or so closely related as to be identical, for purposes of res judicata. *See Rousselle v. Jewett,* 101 Ariz. 510, 421 P.2d 529 (1966); *Pierpont v. Hydro Manufacturing Co., Inc.,* 22 Ariz.App. 252, 526 P.2d 776 (1974). *See also* 1B J. Moore, *supra,* ¶ 0.410[1], at 1157–60; Restatement of Judgments § 61 (1942).

■ The identity of claims, or causes of action, between the two suits here involved is beyond dispute. Regardless of who initiates a paternity suit, Arizona statutorily prescribes that "[t]he issue upon the trial in a paternity proceeding shall be whether or not the defendant is the father of the child." A.R.S. § 12–848(A). Just as the issue must be the same in each case, so correspondingly must be the critical facts presented in proof when parentage of the same child is the underlying question.

We have reserved for last the determinative question, in this case, whether appellant's instant action involves the same parties, or their privies, as did the previous suit brought in the name of the state by the county attorney. "Identity of parties is not a mere matter of form, but of substance. Parties nominally the same may be, in legal effect, different; and parties nominally different may be, in legal effect, the same." *Chicago, R.I. & P. Ry. Co. v. Schendel,* 270 U.S. 611, 620, 46 S.Ct. 420, 424, 70 L.Ed. 757, 764 (1926) (citations omitted). The prime consideration is whether the right of the same person was "presented and adjudicated in both courts." *Id.* at 618, 465 S.Ct. at 423, 70 L.Ed. at 763. *See* 1B J. Moore, *supra* ¶ 0.411[1], at 1251–55; Restatement of Judgments § 35 (1942).

The Arizona statutes which authorize initiation of paternity proceedings allow the suit to be commenced by any of the following persons: The mother, the guardian or best friend of the child, a public welfare official, or a county welfare agency within whose jurisdiction the child resides or is found. A.R.S. § 12–843. Similarly, the statutes provide that the complaint may actually be brought in the name of the state by the county attorney, in the mother's name upon her verified complaint, or in the name of the child's guardian or best friend. A.R.S. § 12–846.

As there is a dearth of Arizona case law dealing with the question of exactly whose rights are represented and adjudicated when one or another of the statutorily authorized persons initiates a paternity suit, we must look to other jurisdictions. See, however, *Backora v. Balkin,* 14 Ariz.App. 569, 485 P.2d 292 (1971). The construction given by Minnesota courts to their corresponding statutes, from which ours are derived, is particularly persuasive.

In *State v. Sax,* 231 Minn. 1, 42 N.W.2d 680 (1950), the county attorney prosecuted a paternity action in the name of the state upon the mother's original complaint. The

---

**2.** There has been no contention in this case, nor can there be any doubt, that a judgment entered by stipulation is just as valid and final as a judgment resulting from a trial on the merits. *Cochise Hotels, Inc. v. Douglas Hotel Operating Co., Inc.,* 83 Ariz. 40, 316 P.2d 290 (1957).

defendant was found guilty, but the mother wished to appeal the resulting order of support which was approved by the court. In finding that the mother had a sufficiently personal financial stake in the support award to render her an aggrieved party entitled to appeal,[3] the court held that Minnesota's statutes "indicate an intention that the proceedings are for the benefit of the mother as well as the child and the public. . . ." *Id.* at 7, 42 N.W.2d at 684. Quoting from an earlier decision, the court reiterated:

" * * * The statute imposes a natural and moral duty—a threefold duty:

"(1) The father's duty to the mother to whom he owes more than gratitude, since by his conduct he has in a measure contributed to her social ostracism and the impairment of her earning power; (2) *The father's duty to his own child* ; and (3) The father's duty to protect the public against the child's becoming a public charge."

*Id., quoting State v. Jeffrey*, 188 Minn. 476, 479, 247 N.W. 692, 693 (1933) (emphasis added).

We agree with the Minnesota court. Our paternity statutes, in several ways, evince an intention to benefit the public, mother and child, regardless of who is formally named a party. The state's main goal in a paternity suit is to divest itself of responsibility for supporting the child through various welfare programs. The mother's aim is assuredly economic as well. An order of filiation bears a concomitant obligation for the father to share in childrearing expenses. The child, however, has not only economic motives, but other independent interests, such as establishing lineage for inheritance purposes. Although the state may have interests different from the mother or child in seeking the father, their mutual objective is singular. Additionally, if the de-

fendant is found to be the father, he incurs identical obligations under A.R.S. § 12–849, regardless of in whose name the suit was brought. That statute provides, upon a finding of defendant's paternity, that the court order past care and future support payments on behalf of the child, as well as payment of the mother's expenses during her period of "lying-in" and "confinement." The statute likewise provides for the court's continuing jurisdiction to modify the child support payments "as the welfare of the child requires."

From the above we conclude that the child's interests are inextricably bound to the litigation of a paternity action, whether brought in the name of the state, the mother or the guardian. We are led to this conclusion by a recognition that the substance of the action, rather than its technical form, must prevail in determining whose rights are being adjudicated. The fact that the state's name appears on the case, rather than the child's, does not change the fact that the issue to be litigated and the effect on the child's rights to support will be equal. This conclusion is further supported by our opinion that the paternity statutes do not contemplate multiple and successive actions by all who are authorized to bring suit. Rather, the action is intended to be brought, and all rights adjudicated, in only one of several ways. The statute, in naming the state as one of the legitimate plaintiffs in a paternity action, authorizes the state to represent all whose interest will be affected by resolution of the issues therein presented.[4] "When the interest of the same person is more than once placed in litigation, judicial finality ought not to be avoided by a change of the form in which the interest is represented." 1B J. Moore, *supra* ¶ 0.411[3], at 1447.

---

**3.** Six years later, in *State v. E.A.H.*, 246 Minn. 299, 75 N.W.2d 195 (1956), the Minnesota Supreme Court held that because the determination of a defendant's guilt in paternity proceedings is prerequisite to an order of support, by virtue of the same reasoning as in *Sax*, a mother has standing to appeal a judgment of non-

paternity in an action brought in the name of the state.

**4.** We have not been presented with, and consequently intimate no views on, the issue of the constitutionality of this statute as it affects a child's due process rights.

We have determined that the appellant may not collaterally impeach the prior judgment. Moreover, it is our view that in addition to the cause of action in both suits being identical, the child's rights and interests are the same in each. Consequently, the prior judgment dismissing the state's paternity suit against appellee must be considered res judicata and binding upon the appellant in the present action. *See Rios v. Industrial Commission*, 120 Ariz. 374, 586 P.2d 219 (App.1978). The trial court's judgment dismissing appellant's present case, based upon appellee's plea of res judicata, is affirmed.

JACOBSON, P. J., and RICHARD M. DAVIS, J. pro tem., concur.

NOTE: The Honorable Richard M. Davis, a Judge *pro tempore* of a court of record, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Arizona Const. art. VI, § 20.