261 P.3d 778

**Melissa DUNCAN, a single woman, Plaintiff/Appellant,**

**v.**

**PROGRESSIVE PREFERRED INSUR-ANCE COMPANY, on behalf of the ES-TATE OF George POP, Intervenor/Ap-pellee.**

**No. 1 CA–CV 10–0265.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 27, 2011.

Tidmore Law Offices, L.L.P. By Mick Levin, Phoenix, Attorneys for Plaintiff/Appellant.

Law Offices of Michael E. Baraban By Trevor H. Gardner, Scottsdale, Attorneys for Intervenor/Appellee.

Kutak Rock LLP By Michael W. Sillyman, Vanessa R. Brown, Scottsdale, Attorneys for Amicus Curiae Property Casualty Insurers of America.

Haralson, Miller, Pitt, Feldman & McAnally, P.L.C. By Stanley G. Feldman, Tucson, And Knapp & Roberts, P.C. By David L.

Abney, Scottsdale, Co–Counsel for Amicus Curiae Arizona Association For Justice/Arizona Trial Lawyers Association.

## AMENDED OPINION

GEMMILL, Judge.

¶ 1 The superior court dismissed Melissa Duncan's personal injury action after granting a motion to dismiss based on insufficiency of process. We conclude that the motion to dismiss in this tort action was an impermissible collateral attack on the order appointing a special administrator in a separate probate proceeding, Maricopa County Superior Court Cause Number PB 2009–001596. Accordingly, we vacate the dismissal and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On December 13, 2007, Duncan was involved in an automobile accident allegedly caused by George Pop. Duncan claims to have sustained personal injuries and over $6,000 in medical expenses. At the time of the accident, Pop was insured under an automobile liability policy issued by Progressive Preferred Insurance Company. The applicable liability coverage limit is $15,000 per person for bodily injuries.

¶ 3 On December 15, 2008, Duncan's attorney sent a letter to Progressive, demanding that it pay Duncan $20,000 as compensation for the injuries and medical expenses Duncan incurred as a result of the December 2007 accident. Duncan was not then aware that the applicable policy limit was $15,000. Progressive refused Duncan's demand, and on March 26, 2009, Duncan filed this action in superior court against Pop. Pop died on April 16, 2009, before Duncan had accomplished service of process on him. The trial court at Duncan's request extended the deadline for service of process until September 2009.

¶ 4 In July 2009, Duncan initiated the separate probate proceeding, requesting informal appointment of a special administrator for Pop's estate in accordance with Arizona Revised Statutes ("A.R.S.") sections 14–3301(A)(7) (2005) and 14–3614(1) (2005). The application sought appointment of the special administrator for the limited purpose of accepting service of process on behalf of the estate and tendering the defense of the lawsuit to Progressive. The application stated that "[u]pon information and belief, Decedent died with no surviving family" and "no one has ever been appointed as a personal representative of Decedent's Estate." It also stated that "it is not anticipated that any recovery in the civil action will exceed the amount of insurance coverage."

¶ 5 Duncan's application was granted by a probate registrar. The Statement of Informal Appointment of Special Administrator issued by the registrar stated: "The undersigned is satisfied that Craigg Voightmann, Esq. is a proper person qualified to act as Special Administrator pursuant to all applicable provisions of A.R.S. Title 14, Chapter 3, Article 6." Additionally, Letters of Special Administrator with Limited Powers ("Letters") were issued to Voightmann. The issuance of letters of administration vests authority in the special administrator. *Grant v. Ariz. Bank*, 5 Ariz.App. 197, 200, 424 P.2d 845, 848 (1967).

¶ 6 In August 2009, Voightmann accepted service of process on behalf of Pop's estate and tendered the defense to Progressive. According to the Letters, Voightmann's appointment as the special administrator terminated once he tendered the defense to Progressive or by October 17, 2009 at the latest.

¶ 7 Pop's estate did not file an answer to the complaint, however, and Duncan filed an application for default on December 22, 2009. Progressive then filed a motion to intervene on behalf of Pop's estate for the limited purpose of contesting the sufficiency of process. Progressive also filed a Rule 12(b)(4) motion to dismiss the action based on insufficiency of process. *See* Ariz. R. Civ. P. 12(b)(4). Progressive argued that Duncan's complaint should be dismissed with prejudice because Pop's heirs were not notified that a special administrator had been appointed for Pop's estate or that a lawsuit was commenced against the estate. Progressive also argued that the manner in which the estate was created resulted in a "shell entity/estate" without a representative and/or administrator with whom defense counsel could confer.

¶ 8 In response, Duncan asserted that service of process upon the special administrator was appropriate under A.R.S. § 14–3614(1) because it was necessary to protect the estate. Duncan also stated that she did not believe Pop had heirs and, even if he did have heirs, it was unlikely that her recovery in the lawsuit would exceed Pop's insurance coverage. She also noted that it is permissible for Progressive to defend Pop's estate without consulting with an administrator or personal representative.

¶ 9 In February 2010, the court granted both of Progressive's motions (to intervene and dismiss). In its order dismissing Duncan's complaint, the court explained:

> This Court interprets A.R.S. § 14–3614 to permit the appointment of a Special Administrator "to protect the estate of the decedent *prior* to the appointment of a *general personal representative.*"
>
> Plaintiff has cited no law allowing for the appointment of a Special Administrator solely for service of process and when no general personal representative has been appointed.

(Emphasis in original.)

¶ 10 Duncan timely appeals from the dismissal of her complaint. We have jurisdiction in accordance with A.R.S. § 12–2101(B) (2003).

## ANALYSIS

¶ 11 Duncan contends the court erred in dismissing her complaint against Pop because a special administrator may be appointed pursuant to A.R.S. § 14–3614(1) for the limited purpose of accepting service of process on behalf of a decedent's estate.[1] Progressive, on the other hand, asserts that the informal appointment was improper because it was not "necessary to protect the estate" as required under § 14–3614(1), and because Duncan did not arrange for the appointment of a general personal representative. Progressive also argues that the special administrator was given powers "beyond those permitted by statute." Because we conclude that Progressive's motion to dismiss was an impermissible collateral attack on the probate registrar's appointment of the special administrator and that the court therefore erred in granting the motion, we do not reach these issues.[2]

¶ 12 We first note that neither party raised the collateral attack issue in the superior court. As a result, the court presiding over the tort case was not given the opportunity to address the issue. This court, however, has discretion to consider matters not raised in the trial court. *City of Tempe v. Fleming,* 168 Ariz. 454, 456, 815 P.2d 1, 3 (App.1991); *Aldrich & Steinberger v. Martin,* 172 Ariz. 445, 447, 837 P.2d 1180, 1182 (App.1992) (appeals court has discretion to consider an issue not raised in the superior court if the question is of statewide importance). In the exercise of our discretion, we address the collateral attack issue presented by the facts of this case. An issue involving orderly judicial administration is a matter of statewide public importance. Moreover, the parties prepared for and addressed the issue at oral argument in this court and the pertinent facts are undisputed, presenting us with a purely legal issue to determine. We review

---

1. The complaint names George Pop as the defendant. Duncan has not amended the complaint to substitute the Estate of George Pop for George Pop. Progressive, however, has not contested the propriety of the complaint and it has proceeded as though the Estate of Pop is a named defendant. Accordingly, for purposes of this decision, we assume that the complaint is sufficient as against Pop's estate. *See Pargman v. Vickers,* 208 Ariz. 573, 575, ¶ 4, 96 P.3d 571, 573 (App.2004) (holding that when "a plaintiff mistakenly sues a decedent and not the decedent's estate and seeks to recover only against insurance proceeds, if the decedent's insurer had notice of the action and knowledge of the plaintiff's mistake within the period specified by Rule 15(c), an amended complaint will relate back to the date of the original complaint absent any prejudice to the insurer and the estate, and assuming the other requirements of Rule 15(c) are met"); Ariz. R. Civ. P. 25(a) (allowing substitution of the proper party when a party has died).

2. Because of the importance of the issues raised in this appeal, we scheduled oral argument and authorized supplemental briefing. Additionally, we have received amicus curiae briefs from the Arizona Association for Justice/Arizona Trial Lawyers Association and the Property Casualty Insurers of America. We appreciate the briefing and arguments presented by counsel for the parties and amici curiae.

legal questions *de novo*. *Green v. Garriott*, 221 Ariz. 404, 417, ¶ 51, 212 P.3d 96, 109 (App.2009).

¶ 13 In Arizona, "a decree in the probate court has all of the conclusiveness inherent in a judgment of a common law court[,]" and, therefore, it may not be collaterally attacked. *Cox v. Mackenzie*, 70 Ariz. 308, 312, 219 P.2d 1048, 1051 (1950) (citations omitted). A collateral attack on a judgment "is an effort to obtain another and independent judgment which will destroy the effect of the former judgment." *Id.* (citation omitted). Moreover, unless a judgment is void because the court lacked jurisdiction over the subject matter, over the parties, or to render the particular judgment, the judgment cannot be collaterally attacked even if it is "erroneous or wrong, so that it could be reversed on appeal or set aside on direct attack." *Walker v. Davies*, 113 Ariz. 233, 235, 550 P.2d 230, 232 (1976) (quoting *School Dist. # 1 of Navajo County v. Snowflake U.H.S. Dist.*, 100 Ariz. 389, 391–92, 414 P.2d 985, 987 (1966)).

¶ 14 Progressive's motion to dismiss, submitted in the tort action, was a collateral attack on the probate registrar's appointment of the special administrator in the probate proceeding. A probate registrar has authority pursuant to A.R.S. § 14–3614(1) to informally appoint a special administrator "when necessary to protect the estate of a decedent." [3] The powers of a special administrator are strictly construed, and his authority must be found in the statutes and the orders in the probate court. *In re Estate of Pitt*, 1 Ariz.App. 533, 537, 405 P.2d 471, 475 (1965). A special administrator has the same powers as a personal representative necessary to perform his limited duties.

A.R.S. § 14–3616 (2005); *see also* A.R.S. § 14–1201(48) (2010) [4] (" 'Special Administrator' means a *personal representative* as described by §§ 14–3614 through 14–3618.") (emphasis added). The probate registrar in this case, in accordance with § 14–3614(1), appointed Voightmann as the estate's special administrator and specifically authorized him to accept service of process on behalf of the estate and forward the summons and complaint to Progressive.

¶ 15 Even assuming (without deciding) that the registrar erred in appointing a special administrator under § 14–3614(1), such an error cannot form the basis for a collateral attack in the separate tort action. *See Cox*, 70 Ariz. at 312, 219 P.2d at 1051; *Walker*, 113 Ariz. at 235, 550 P.2d at 232. The registrar, acting on behalf of the superior court in a separate probate proceeding, had the jurisdiction and authority to informally appoint the special administrator. Moreover, once appointed, a special administrator has powers similar to a personal representative and as specifically authorized and limited by the probate court or registrar. As a result, the special administrator here had the authority to accept service of process on behalf of Pop's estate so long as the registrar's order of appointment and the Letters issued by the clerk had not been vacated or otherwise set aside *in the probate proceeding*.

¶ 16 In its motion to dismiss, Progressive requested the court presiding over the tort action to dismiss Duncan's complaint for insufficiency of process. [5] Progressive primarily argues that the probate registrar erred in appointing a special administrator to accept service of process and, therefore, service on the special administrator was insufficient. Progressive's motion constituted "an

---

3. In contrast to *informal appointment* under subsection (1) of A.R.S. § 14–3614, *formal appointment* of a special administrator under subsection (2) is authorized when "necessary to preserve the estate or to secure its proper administration." A.R.S. § 14–3614(2). The "proper administration" of an estate may include accepting creditors' claims. *See In re Estate of Wilson*, 8 Neb. App. 467, 594 N.W.2d 695, 700 (1999) (interpreting a statute identical to A.R.S. § 14–3614(2) to allow the formal appointment of a special administrator for the limited purpose of accepting service of process on behalf of an estate).

4. We cite the current versions of applicable statutes because no revisions material to this decision have since occurred.

5. Insufficiency of process concerns the form of the papers rather than the manner or method of its service. *See Schwartz v. Ariz. Primary Care Physicians*, 192 Ariz. 290, 295, 964 P.2d 491, 496 (App.1998).

effort to obtain another and independent judgment" which would "destroy the effect" of the registrar's appointment. *See Cox,* 70 Ariz. at 312, 219 P.2d at 1051.

¶ 17 Progressive could have directly challenged the appointment in the probate proceeding and initially filed motions to do so but later withdrew this effort. *See State v. Valenzuela,* 109 Ariz. 109, 110, 506 P.2d 240, 241 (1973) (appellate court may take judicial notice of records of superior court). In *Pargman,* for example, we explained that an insurance company successfully petitioned the probate court to vacate the informal appointment of a special administrator. 208 Ariz. at 576, ¶ 12, 96 P.3d at 574.

¶ 18 Because neither Progressive nor anyone else has challenged—in the probate proceeding—the appointment of the special administrator, the appointment has not been vacated or set aside. As a result, Voightmann as the special administrator was authorized to accept service of process and forward the suit papers to Progressive. Because Progressive's motion to dismiss in this tort action was an impermissible collateral attack on the actions of the registrar in the probate proceeding, the superior court erred in granting Progressive's motion to dismiss.

¶ 19 Progressive contends that an impermissible collateral attack could not have occurred here because only final *judgments* are protected against collateral attacks. Progressive points out that the Arizona appellate decisions discussing collateral attacks have involved judgments rather than orders issued by the superior court or a probate registrar on behalf of the superior court. We conclude, however, that the prohibition against collateral attacks may be applicable in appropriate instances to orders that are not final judgments in the traditional sense. The probate registrar's appointment of a special administrator in the separate probate proceeding is an example of such an order. *See Franks v. Norfolk S. Ry. Co.,* 679 So.2d 214, 217–18 (Ala.1996) (reversing, as an impermissible collateral attack on order appointing administrator ad litem, a trial court decision dismissing tort action on basis that administrator should not have been appointed); *Bennett v. Nicholas,* 250 S.W.3d 673,

675, 680 (Ky.Ct.App.2007) (concluding that defense motion to dismiss wrongful death action, on ground that administrator of decedent's estate was not proper representative of the estate and thus lacked standing to bring the action, constituted an impermissible collateral attack on the order appointing the administrator). *Cf. Edwards v. Nelson,* 372 Ark. 300, 275 S.W.3d 158, 162 (2008) (reversing dismissal of wrongful death action because "the civil division of circuit court usurped the authority of the probate division of circuit court by its ruling" that plaintiff should not have been appointed personal representative of the estate).

¶ 20 Progressive further argues the appointment was void on its face because it forced the special administrator to breach his fiduciary obligation to the estate and because the appointment violated potential heirs' rights of due process. These arguments, even if correct, should have been raised in the probate proceeding and do not render the appointment void. *See Walker,* 113 Ariz. at 235, 550 P.2d at 232 (stating that a judgment cannot be collaterally attacked unless it is void because the court rendering the judgment lacked jurisdiction); *Bennett,* 250 S.W.3d at 679 ("A duly appointed representative of an estate, even if he should not rightfully be in that office, serves with authority until he is removed; his appointment is voidable, not void.").

## CONCLUSION

¶ 21 For these reasons, we vacate the superior court's order granting Progressive's motion and dismissing the complaint. This matter is remanded for further proceedings.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge and PATRICIA A. OROZCO, Judge.