NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

MICHELLE NITSCH, *Petitioner/Appellant*,

*v.*

KURT GUSTAVE KLAVUHN, *Respondent/Appellee*.

No. 1 CA-CV 20-0622 FC
FILED 7-27-2021

Appeal from the Superior Court in Maricopa County
No. FC2016-006272
The Honorable Kerstin G. LeMaire, Judge

**AFFIRMED**

COUNSEL

Law Offices of John R. Zarzynski, Phoenix
By Georgia A. Wilder
*Counsel for Petitioner/Appellant*

Berkshire Law Office, PLLC, Tempe
By Keith Berkshire, Alexandra Sandlin
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Jennifer M. Perkins joined.

---

**C R U Z**, Judge:

¶1        Michelle Nitsch ("Wife") appeals from the court's entry of the qualified domestic relations order ("QDRO") awarding Kurt Gustave Klavuhn ("Husband") credit for contributions he made to his retirement account after the termination of the marital community, as well as gains attributed to those contributions.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Husband and Wife were married for about fifteen years when Wife filed for legal separation in 2016.  The matter was later converted to a dissolution action.

¶3        Husband and Wife both had retirement accounts that existed before their marriage, and both alleged that they could trace premarital, separate property funds in their accounts.  During the dissolution proceedings, the superior court found that neither party provided sufficient evidence that their premarital retirement accounts maintained their separate nature.  As a result, the court appointed "a special master to divide the community portion of [the] parties' retirement benefits after determining which portion of the accounts (if any) is a party's sole and separate property."

¶4        After the special master conducted a hearing, he found that neither party was able to trace their premarital funds and prove they maintained their sole and separate character.  However, the special master noted that Husband had continued to make contributions to one of his retirement accounts after termination of the marital community, and he should be credited for those contributions:

> By stipulation of the parties, Husband was to receive credit for his proven contributions from July 1, 2016 [the date after Wife petitioned for legal separation], to the date of division. No gains or losses will be attributable to those contributions. Accordingly, the account balance on the date of division of

TIAA-Pittsburgh will be reduced by the total amount of Husband's contributions between July 1, 2016, and the date of division (and affirmed to Husband as his separate property), and the balance remaining divided equally.

¶5          Neither party filed an objection to the special master report, and the court adopted the same in a minute entry order. Husband subsequently lodged a QDRO that allocated the retirement benefits between the parties and credited Husband for the contributions he made following July 1, 2016, adjusted for gains and losses. Wife objected to the QDRO, arguing the special master's report indicated Husband was not entitled to gains or losses on his post-petition contributions. Shortly after, the court entered the QDRO, and wife appealed.

¶6          We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## DISCUSSION

I.          Waiver and Jurisdiction

¶7          Wife argues that the court erred in entering the QDRO, because it awards Husband investment gains on the contributions he made to his retirement account after the termination of the community, but the special master's report expressly stated that Husband would not receive credit for these gains.

¶8          Wife contends that Husband waived his claim to investment gains by failing to timely object to the special master's report. However, neither the special master's report nor the court's order adopting the special master's report were final orders. Husband was not required to object to them to preserve this issue. The parties were on notice that a QDRO would be issued after the special master rendered his report, and the court expressly stated it "shall reserve jurisdiction to enter any QDRO(s) or other orders relating to the special master's work." *See Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 12 (App. 2007) (finding the court's order adopting the special master's report was not a final order of the court, because the superior court "contemplated the later preparation and entry of the [QDRO]"); *see also Choy Lan Yee v. Yee*, 251 Ariz. 71, 76, ¶¶ 13-14 (App. 2021) ("Although a special order made after final judgment in family court does not require a Rule 78 statement of finality to be appealable, the family court must have fully resolved all issues raised in a post-decree motion or petition before an appeal can be taken . . . .").

¶9            Similarly, contrary to Wife's argument, the superior court did not violate principles of res judicata or collateral estoppel by entering the QDRO.  Under the doctrine of res judicata, a final judgment on the merits bars a second lawsuit involving the same parties based on the same cause of action.  *Norriega v. Machado*, 179 Ariz. 348, 351 (App. 1994).  Similarly, collateral estoppel prevents a party from relitigating an issue or fact, but only if a final judgment was entered on that issue or fact.  *See Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573 (1986).  Here, neither theory applies because the special master's report and the court's order adopting the report were not final orders.  The QDRO was also not a "collateral attack" on the court's prior order because the minute entry order was not a final judgment and the court expressly retained jurisdiction to enter "any QDRO(s)" related to the special master's report.  *See Cox v. Mackenzie*, 70 Ariz. 308, 312-13 (1950).

¶10          Thus, we find that Husband did not waive his claim to investment earnings on his post-dissolution retirement contributions and that this issue is properly before this court.

II.      Division of Husband's Retirement Account

¶11          Wife contends the superior court erred in entering the QDRO because it awards her share of community earnings on community property to Husband.  We review the superior court's division of marital property for an abuse of discretion, but we review de novo the characterization of property as separate or community.  *In re Marriage of Flower*, 223 Ariz. 531, 535, ¶ 14 (App. 2010); *Schickner v. Schickner*, 237 Ariz. 194, 199, ¶ 22 (App. 2015).

¶12          "Property that is acquired by a spouse after service of a petition for dissolution of marriage, legal separation or annulment is also the separate property of that spouse if the petition results in a decree of dissolution of marriage, legal separation or annulment."  A.R.S. § 25-213(B).  It is undisputed that Husband made contributions to his retirement account after service of Wife's petition for legal separation in June 2016.  These contributions are Husband's separate property.  This would include any gains on the contributions.

¶13          Wife argues the retirement accounts are "entirely community property in nature" and the "increases, rents, and profits from community assets are community property."  But the retirement accounts cannot be "entirely" community property if they contain Husband's post-petition contributions, which she admits are his separate property.  Wife cites no

legal authority for the proposition that the increases and profits from Husband's separate property should be categorized as community property. *See* A.R.S. § 25-213(A)-(B). There is nothing in the record to indicate—and Wife does not allege—that the increase in value of Husband's separate property was due to the efforts of the community. *See Cockrill v. Cockrill*, 124 Ariz. 50, 53-54 (1979). And in her reply brief, Wife concedes that the gains from Husband's separate property would ordinarily also be categorized as his separate property. She instead argues that Husband agreed to award Wife a portion of this separate property, and "[a]bsent Husband's stipulation, Husband would have necessarily been entitled to all contributions made to his retirement account after service of the Petition for Dissolution and all investment earnings thereon."

¶14 However, the record is devoid of evidence of any such stipulation between the parties. She claims the special master's report alone, which states "[b]y stipulation of the parties," is sufficient evidence of Husband's agreement. But the party's decree awards "to each party half of the *community portion* of the retirement plans identified as either a community asset or containing assets that belong to the community. The community portion is defined as assets acquired from the date of marriage *until the date of termination of the community*." (Emphasis added.) To the extent the special master's report may conflict with the terms of the QDRO, it attempts to award Wife more than her half of the community portion of the retirement accounts.

¶15 Additionally, the parties' pretrial statement includes a stipulation that "[e]ach party claims that a portion of their respective retirement accounts represents his sole and separate premarital assets which should be awarded to him or her as sole and separate property." In her proposed resolution statement, Wife stated that "[e]ach party should be awarded his or her sole and separate property, including any post-petition earnings." The evidence demonstrates that the parties stipulated that both Husband and Wife would be awarded their sole and separate property, not that Husband would concede any portion of his separate earnings to Wife.

¶16 The superior court did not err in awarding Husband the gains on his post-petition contributions to his retirement account. Although the special master found that Husband should not be awarded gains or losses on these contributions, given the lack of evidence of any stipulation by the parties, it would have been error for the court to incorporate that finding as part of its final QDRO, thereby divesting Husband of this separate property. *Proffit v. Proffit*, 105 Ariz. 222, 224 (1969) ("[T]he divorce court, in pronouncing a divorce decree, has no authority to compel either party to

divest himself or herself of [t]itle to separate property."); *Weaver v. Weaver*, 131 Ariz. 586, 587 (1982) ("[The superior court's] jurisdiction with respect to separate property is limited to assigning to each spouse his or her separate property . . . ."). The special master was appointed to determine which portion of the retirement accounts was a party's sole and separate property, and it exceeded its authority when it attempted to award Wife the separate property of Husband, a mistake which was corrected in the superior court's final orders. To the extent the superior court considered Wife's objection to Husband's QDRO, we deem the court's decision to adopt Husband's version of the QDRO as a factual determination that no stipulation ever existed. We will not disturb the court's factual determinations unless they are clearly erroneous. *Danielson v. Evans*, 201 Ariz. 401, 406, ¶ 13 (App. 2001). Wife failed to prove the court's factual finding was clear error.

**¶17** The court did not improperly award Wife's share of community earnings to Husband. The investment gains on Husband's contributions are his sole and separate property, not community property, and there is no evidence the parties stipulated otherwise. We find no error.

## CONCLUSION

**¶18** For the foregoing reasons, we affirm. Both parties request an award of their attorneys' fees on appeal. We have considered the relative financial resources of the parties and the reasonableness of the positions asserted on appeal. A.R.S. § 25-324(A). In the exercise of our discretion, we grant Husband his reasonable attorneys' fees in addition to his costs on appeal upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA

6